# JAQUITH *v.* ROWLEY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

No. 81.　Argued and submitted November 10, 1902.—Decided February 23, 1903..

One who received money to indemnify him for giving bail bonds for a person subsequently and more than four months thereafter adjudicated a bankrupt, and against whom the judgment creditors in the suits in which he gave the bonds are seeking to enforce execution, holds such money as an adverse claimant within the meaning of section 23 *a* and *b* of the bankruptcy act of 1898, and the District Court of the United States does not have jurisdiction in a summary proceeding on the petition of the trustee to compel him to turn such money over to the trustee in bankruptcy.

It makes no difference as to this question of jurisdiction whether the judgment creditors have or have not proved their claims before the referee in bankruptcy. Such creditors have the right to obtain and enforce their judgments in the state courts.

THE appellant herein was appointed a trustee in bankruptcy by the United States District Court in Massachusetts on September 18, 1900, and his bond was approved on the 21st of that month. The bankrupt was duly adjudged such on August 15, 1900, and at the date of that adjudication there were pending in the Superior Court of Massachusetts, for Middlesex County, two suits, one of E. W. Thayer against the bankrupt, in which a bail bond had been taken on November 14, 1899, and the other a suit of E. F. Flanders against the bankrupt, in which case a bail bond had also been taken on that day, and in order to protect the surety, Joseph P. Silsby, Jr., on the bail bond in each of the two cases, the bankrupt on the same day deposited in the hands of the surety the two sums of $148 in the Thayer suit and $125 in the Flanders suit. These sums were to be held to indemnify the surety in each case, respectively, if the bankrupt avoided the bail bond. After the adjudication in bankruptcy these suits proceeded to judgment in the state court and the plaintiffs took out execution, which they are seeking to enforce

against the surety on the bail bond, but not against the bank-rupt himself.

At the first meeting of the creditors the plaintiff Thayer in the suit in the state court against the bankrupt appeared in the bank-ruptcy court and proved her claim for $150. Flanders, the plain-tiff in the other suit in the state court, did not appear or prove his claim. After the appointment of the trustee, and without leave of the bankruptcy court, and without notice to or the knowl-edge of the trustee, the plaintiff in each of the two suits took judgment by default in the state court. Upon learning of the entry of the judgments the trustee notified the surety not to pay the money over, and then, in the name of the bankrupt, petitioned the state court to vacate the judgment and to order the execution returned, which the state court refused to do, and thereupon the trustee filed his petition in the District Court of the United States for the District of Massachusetts against the plaintiffs in the two suits, their attorney and the surety, set-ting up that the prosecution of the suits in the state court was contrary to the provisions of the bankruptcy act and a contempt of court, and praying that the plaintiffs and their attorney be enjoined from collecting the judgments, and that the surety be enjoined from paying the money in his hands, and that the par-ties, plaintiffs in the judgments and their attorney, be adjudged in contempt, etc. This motion was denied and the restraining order refused.

The petition was subsequently amended by leave of the court so as to ask that the plaintiffs and their attorney in the state suits be enjoined from collecting the judgments or making any levy under the execution or taking any further proceedings thereon pending the further and final determination of the court in bankruptcy upon the petition of the trustee, and also that the surety, Joseph P. Silsby, Jr., be ordered to pay over to the trustee the funds deposited in his hands; also that the sev-eral plaintiffs in the state suits be ordered to appear before the referee in bankruptcy and prove their claims against his estate and establish their liens, if any, upon the funds paid over to the trustee by Joseph P. Silsby, Jr. This amended petition omitted the prayer that the plaintiffs in the suits in the state court might

be adjudged guilty of contempt, etc. Upon the petition as amended a motion for a rehearing was made and granted, and the appellees appeared and objected that the court had no jurisdiction in the matter of the petition, and after argument the court so held and denied the petition for want of jurisdiction only, and allowed an appeal to this court.

In dismissing the petition the district judge certified that the following questions arose before him, namely:

"1. Do the provisions of the second clause of section 23 of the act of Congress, known as the bankruptcy act of 1898, control and limit the jurisdiction of the several District Courts of the United States, so that said courts cannot permanently enjoin a creditor of the bankrupt who *has* proved his debt in the bankruptcy court, from collecting a judgment recovered in the state court and from making levy under an execution taken out on said judgment; and do they limit the jurisdiction of the said courts so that these courts may not require said creditor to submit the controversy to their judgment?

"2. Do the provisions of the second clause of section 23 of the act of Congress, known as the bankruptcy act of 1898, control and limit the jurisdiction of the several District Courts of the United States, so that said courts cannot permanently enjoin a creditor of the bankrupt who *has not* proved his debt in the bankruptcy court, from collecting a judgment recovered in the state court, and from making levy under execution taken out on said judgment; and do they limit the jurisdiction of the said courts so that these courts may not require said creditor to submit the controversy to their judgment?

"3. Do the provisions of the second clause of section 23 of the act of Congress, known as the bankruptcy act of 1898, control and limit the jurisdiction of the several District Courts of the United States over controversies between the trustee and a third person in the possession of property alleged to belong to the bankrupt, it being also alleged that said third person has no beneficial interest in the said property, but has the sole duty of paying or delivering it over in settlement of the debts of the bankrupt?

"4. Can the District Court of the United States entertain

jurisdiction of proceedings on petition by a trustee in bankruptcy to recover property alleged to belong to the bankrupt, but held under a claim or lien or security by the bankrupt's creditor, or by third parties for the benefit of said creditors?

"5. Can the District Court for the District of Massachusetts take jurisdiction over this suit as it now stands on record?"

Submitted by *Mr. Harry J. Jaquith,* in person, for appellant.

Argued by *Mr. Clarence W. Rowley,* in person, for appellees.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

This proceeding is governed by the principles decided in *Bardes* v. *Hawarden Bank,* 178 U. S. 524; *Bryan* v. *Bernheimer,* 181 U. S. 188, and *Mueller* v. *Nugent,* 184 U. S. 1.

The objection that it is not a suit within the meaning of the twenty-third section of the bankruptcy law is without force. The proceeding was a summary application to the court in bankruptcy to grant an order in a matter, the result of the granting of which would be to immediately take from the surety moneys which had been deposited with him before the commencement of the proceedings in bankruptcy, and thus compel him to come into the bankruptcy court for the litigation of questions as to his right to retain the money claimed by him. It would also enjoin the plaintiffs in the state suits from proceeding to collect their judgments from the surety in the bail bonds. To extend such a jurisdiction over an adverse claimant would be within the prohibition of section 23, *a* and *b,* whether such jurisdiction were exerted by an action strictly so-called or by a summary application to the court in bankruptcy. It is the exercise of jurisdiction which the section prohibits, and the particular method of procedure in the court is immaterial. The surety in whose hands the money was deposited to indemnify him for his liability on the bail bond was an adverse claimant within the meaning of that section of the act, and could not be pro-

ceeded against in the bankruptcy court unless by his consent, as provided for therein. It is not necessary in order to be an adverse claimant that the surety should claim to be the absolute owner of the property in his possession. It is sufficient if, as in the present case, the money was deposited with him to idemnify him for his liability upon the bail bond and that liability had not been determined and satisfied. If the trustee desire to test the question of the right of the surety to retain the money he must do so in accordance with the provisions of the section of the bankrupt law above referred to.

*Bryan* v. *Bernheimer*, 181 U. S. *supra*, does not, so far as the question here involved is concerned, touch or limit the decision in *Bardes* v. *Hawarden Bank*, 178 U. S. *supra*.

In *Mueller* v. *Nugent*, 184 U. S. 1, it was claimed that where property of a bankrupt came into the hands of a third party before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which the agent asserted no adverse claim, the bankruptcy court, nevertheless, had no power by summary proceedings to compel the surrender of the property to the trustee in bankruptcy duly appointed. In regard to this claim it was said by the court, through Mr. Chief Justice Fuller, as follows:

" In other words, the question reduces itself to this: Has the bankruptcy court the power to compel the bankrupt, or his agent, to deliver up money or other assets of the bankrupt, in his possession or that of some one for him, on petition and rule to show cause? Does a mere refusal by the bankrupt or his agent so to deliver up oblige the trustee to resort to a plenary suit in the Circuit Court or a state court, as the case may be? If it be so, the grant of jurisdiction to cause the estates of bankrupts to be collected, and to determine controversies relating thereto, would be seriously impaired, and, in many respects, rendered practically inefficient. The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication,

and expense, intended to be avoided by the simpler methods of the bankrupt law.

\*   \*   \*   \*   \*   \*   \*   \*

"The position now taken amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact and therefore an adverse claim when the petition was filed, and to that we cannot give our assent.

\*   \*   \*   \*   \*   \*   \*   \*

"In this case, however, respondent asserted no right or title to the property before the referee, and the circumstances under which he held possession must be accepted as found by the referee and the District Court.

\*   \*   \*   \*   \*   \*   \*   \*

"In the case before us, William T. Nugent held this money as the agent of his father, the bankrupt, and without any claim of adverse interest in himself. If it was competent to deal with Davidson, the assignee in the case of *Bryan* v. *Bernheimer*, by summary proceedings, William T. Nugent could be dealt with in the same way."

In other words, *Nugent's* case simply holds that, where the agent held money belonging to the bankrupt, to which he made no claim, but simply refused to give up the property, which he acknowledged belonged to the bankrupt, the bankruptcy court had power, by summary proceedings, to order him to deliver such property to the trustee in bankruptcy.

The case before us is wholly different. The surety claims the right to hold the money as against everybody until his liability on the bail bond is satisfied, and that claim is adverse to any claim that the trustee may make upon him for the money which is to indemnify him as stated.

There is no difference between the two plaintiffs in the state court on account of one having proved her claim in bankruptcy and the other having failed so to do. She did not waive her claim against the surety in the bail bond even by implication, but, on the contrary, stated that she intended to retain the same.

If the trustee has the right to obtain possession of the money from the surety, he must assert it in accordance with the pro-

visions of section 23 of the bankruptcy act and not by this summary proceeding in bankruptcy.

The plaintiffs in the suits in the state court had the right to proceed to judgment in that court and to collect their judgments against the surety on the bail bond, and the court in bankruptcy had no power to prevent such proceedings in suits over which the state court had full cognizance. *Eyster* v. *Gaff*, 91 U. S. 521, cited in *Bardes* v. *Hawarden Bank*, *supra*.

Our conclusion is that the District Court was without jurisdiction in the matter submitted to it in the petition of the trustee, and its decree dismissing such petition for want of jurisdiction is, therefore,

*Affirmed.*